GEORGE M. FINLEY AND ELIZABETH E. FINLEY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 366–69.    Filed September 22, 1970.

*C. Rogers Hall, Jr.*, for the petitioners.
*R. S. Erickson*, for the respondent.

OPINION

KERN, *Judge:* Respondent determined a deficiency of $1,925.11 in petitioners' Federal income tax for the calendar year 1965. Due to concessions by both parties, the only remaining issue relates to the computation of petitioners' income tax under the "alternative tax" provisions of section 1201(b).[1] That section as it read at all times pertinent to this case is set out in the margin hereof.[2]

All of the facts have been stipulated and are so found. The stipulation and the exhibits attached thereto are incorporated herein by this reference.

The petitioners are husband and wife who resided in Westminster, Md., at the time the petition herein was filed and who timely filed their joint Federal income tax return for the calendar year 1965 with the district director of internal revenue in Baltimore, Md. Petitioners' taxable income for the year in question was in the total amount of $81,401, consisting of the following types of income:

---

[1] All section references are to the Internal Revenue Code of 1954 as applicable to the year in question, unless otherwise indicated.

[2] SEC. 1201(b). OTHER TAXPAYERS.—If for any taxable year the net long-term capital gain of any taxpayer (other than a corporation) exceeds the net short-term capital loss, then, in lieu of the tax imposed by sections 1 and 511, there is hereby imposed a tax (if such tax is less than the tax imposed by such sections) which shall consist of the sum of—

(1) a partial tax computed on the taxable income reduced by an amount equal to 50 percent of such excess, at the rate and in the manner as if this subsection had not been enacted, and

(2) an amount equal to 25 percent of the excess of the net long-term capital gain over the net short-term capital loss.

Ordinary taxable income_____ $24,707
Net long-term capital gain as defined by sec. 1222(7)[1]_____ $113,388
Net short-term capital loss_____ 0
Section 1202 deduction_____ 56,694
Taxable income derived from net long-term capital gain_____ 56,694
    Total _____ 81,401

[1] For simplicity's sake, we will use "net long-term capital gain" whenever referring to "the excess of net long-term capital gain over net short-term capital loss" since the petitioners did not have a net short-term capital loss in 1965.

The parties have stipulated that "the following reflects petitioners' method of tax computation as used in their 1965 joint Federal income tax return but now corrected to reflect the agreed adjustment [made in other paragraphs of the stipulation]; more specifically petitioners divided their total taxable income of $81,401 into various fragments as follows:

First fragment—
    Taxable Income not derivative from net long-term capital
        gains * * * _____ $24,707
Second fragment—
    Net long-term capital gains minus sec. 1202 deduction not in
        excess of $44,000 when added to first fragment_____ 19,293
            Taxable income subject to tax rate under [Code] sec. 1___ $44,000
Third fragment—
    Net long-term capital gain minus sec. 1202 deduction in excess
        of second fragment which is taxable income subject to 50
        percent rates. (Net rate of 25 percent per sec. 1201(b))____ 37,401
            Total taxable income (1, 2, and 3, above) * * *_____ 81,401"

By computing the tax on the first and second "fragments" under section 1 and the tax on the third "fragment" under section 1201(b) (2), and by adding the result, petitioners arrive at a figure which they contend represents the amount of tax due. This being less than the tax on all of the taxable income computed under section 1, petitioners claim that it should be considered as the alternative tax provided by section 1201.

Respondent has determined that petitioners' computation of tax is erroneous in that it is not in conformity with the provisions of section 1201(b), that the alternative tax correctly computed pursuant to section 1201(b) is greater than the tax imposed by section 1, and therefore an alternative tax is not to be imposed "in lieu of the tax imposed by sections 1 and 511."

Respondent has computed a partial tax pursuant to section 1201(b) (1) on petitioners' taxable income ($81,401) reduced by an amount equal to 50 percent of the excess of the net long-term capital gain of petitioners over their net short-term capital loss (50 percent of $113,388 or $56,694), such reduced amount of petitioners' taxable income being $24,707. This partial tax so computed is $5,914.52. Pursuant to section 1201(b) (2) respondent has added "an amount equal to 25 percent of the excess of the net long-term capital gain over the net short-term

capital loss" or $28,347. Thus the total of the alternative tax so computed is $34,261.52, an amount in excess of $34,152.58 (the tax as computed under section 1) and therefore not to be imposed in lieu thereof.

Petitioners in their computation of the alternative tax have computed a partial tax not on the taxable income ($81,401) reduced by 50 percent of the excess of the net long-term capital gain over the net short-term capital loss ($56,694) or $24,707, but have injected into their computation a concept not referred to or sanctioned in any way by the statute in that they have added a second "fragment" of their taxable income to that part of the income upon which a partial tax is to be computed pursuant to section 1201 "at the rate and in the manner as if this subsection [1201(b)(1)] had not been enacted" i.e. at the rates set out in section 1. This "fragment" ($19,293) represents that part of the "net long-term capital gains minus section 1202 deductions" which when added to the income of $24,707 equals $44,000. This latter figure is taken from the tables contained in section 1 as representing the minimum amount of net taxable income subject to tax rates of more than 50 percent. Thus they would arrive at a figure of $14,060 for a "partial tax" by applying the tax rates prescribed by section 1 not only to ordinary income but also to a "fragment" of the net capital gains. They then proceed to subtract the same second fragment of $19,293 from $56,694 (50 percent of the taxable income derived from net long-term capital gain). The result of this subtraction is $37,401. By taking half of this amount or $18,700.50, petitioners arrive at "an amount equal to 25 percent of the excess of the net long-term capital gain over the net short-term capital loss" under section 1201(b)(2). By adding the figure of $18,700.50 to $14,060, petitioners arrive at an alternative tax of $32,760.50. Since this amount is less than the tax computed under section 1, petitioners contend that the alternative tax should be imposed in lieu of the tax imposed by section 1.

It is stipulated by the parties that "if respondent's contention is sustained, the deficiency as reflected in the Notice is correct, and that if petitioners' contention is sustained a rule 50 computation will be necessary."

Lest any abbreviation or compression on our part of petitioners' argument be considered invidious, we quote in full the argument from their brief [3] as follows:

The Commissioner erred in his computation of Petitioners' income tax liability for 1965.

Section 1.1201–1(b) of the Income Tax Regulations provides as follows:

(b) Other Taxpayers. In case the net long-term capital gain of a taxpayer (other than a corporation) exceeds the net short-term capital loss, Section 1201(b) I.R.C. imposes an alternative tax in lieu of the tax imposed by Sections

---

[3] Petitioners filed no reply brief.

1 and 511, *if and only if such alternative tax is less than the tax imposed by Sections 1 and 511 * * *.*

Since in 1965 joint individual taxpayers paid 50% or more tax on their taxable income in excess of $44,000, the Petitioners applied the Section 1201(b) alternative (25%) net long-term capital gains tax at this dividing point, in accordance with the above Regulation since such alternative tax was clearly less than the tax imposed by Sections 1 and 511 of the Internal Revenue Code of 1954.

Petitioners contend that Congress clearly intended that the tax on such net long-term capital gains be the *lowest* amount aggregately imposed so as to favorably operate to split any net long-term capital gains between the provisions of Sections 1 and 1201(b) of the Internal Revenue Cole of 1954. Otherwise, the aforecited provision of Section 1.1201–1(b) has no meaning in fact.

The Commissioner's method of computation is a denial of due process under the Fifth Amendment and a denial of the equal protection clause under the Fourteenth Amendment of the United States Constitution.

The Commissioner's method of imposition of tax is discriminatory, arbitrary and capricious, and hence unconstitutional in that it deprives Petitioners of the tax rates that are available to other taxpayers whose aggregate of ordinary income and long-term capital gain income does not exceed $44,000.

As a result of the Commissioner's computation of tax, Petitioners are forced to pay a higher tax on their net income up to $44,000 than another taxpayer in the same bracket would have to pay for the same amount. This discrimination violates Petitioners' constitutional rights to equal protection under the law and amounts to a denial of due process.

As was recognized by Mr. Justice Cardoza speaking for the Court in *Steward Machine Company* v. *Davis*, 301 U.S. 548 (1937) when he wrote:

We assume that discrimination, if gross enough, is equivalent to confiscation and subject under the Fifth Amendment to challenge and annulment.

In this case, the discrimination is gross enough to amount to a denial of Petitioners' constitutional rights against such discrimination. Therefore, since there is a constitutional violation, the determination of the Commissioner begs the question of said discrimination, and hence cannot be sustained.

In our opinion the argument of petitioners is without merit. Their proposed computation of the alternative tax is not supported by any rational construction of the statute, by any evidence of congressional intent or by any regulation of the Commissioner. The contention that respondent's method of computing the tax here in question is unconstitutional since it is "discriminatory, arbitrary and capricious" and thus is "a denial of Petitioners' constitutional rights" must fail since petitioners have not demonstrated that respondent's method, which is an exact conformity with the statute, is "discriminatory, arbitrary and capricious." If anything could be considered unconstitutional under petitioners' argument (which we emphatically deny) it would be the statute itself which is the very source of the benefits claimed by petitioners.

*Decision will be entered for the respondent.*